UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DOMINICK LUCKETT, et al., | ) |
| | ) |
| Plaintiffs, | ) No. 4:14-CV-93 RLW |
| | ) |
| v. | ) |
| | ) |
| WELLS FARGO BANK, N.A., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on the Defendant's Motion to Dismiss Counts I, II, III and IV (ECF No 20). This matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiffs Dominick Luckett and Trina Luckett ("Plaintiffs") allege the following facts in their First Amended Complaint (First Amended Complaint (hereinafter, "Complaint"), ECF No. 15), which the Court assumes are true for purposes of the motion to dismiss.

On October 29, 2004, Plaintiffs signed a Deed of Trust for the mortgage note with Defendant Wells Fargo, N.A. ("Defendant") for their home located at 13 Mary Ann Court in Florissant, Missouri ("the Property"). (Complaint, ¶¶5-6). On June 11, 2011, Plaintiffs' home was damaged when a tree fell on it. (*Id.*, ¶8). Plaintiffs filed a claim with their insurance company, State Farm Insurance. (*Id.*, ¶9). Under the State Farm replacement coverage policy, Plaintiffs' damage was estimated to by $4,439.01. (*Id.*, ¶11). State Farm subsequently sent insurance claim checks in the amounts of $3,100.18 and $338.83 in the name of Plaintiffs and Defendant. (*Id.*, ¶12). Defendant told Plaintiffs to endorse these checks and send them to Defendant. (*Id.*, ¶13). Defendant was then to deposit the checks into a special escrow account.

(*Id.*, ¶14). In a letter dated July 5, 2011, Defendant gave Plaintiffs three (3) options to make the funds available:

1) Bring your mortgage account current and if the insurance claim check amount does not exceed $15,000.00, please contact the Property Loss department in order for the funds held in the special escrow account to be released to you for use towards repairs of the property. ***
2) You may select a contractor to complete the repairs. Payments will be issued payable jointly to you and your contractor for completion of the repairs. The claim will be processed based on the enclosed guidelines.
3) You may use personal funds to make repairs and provide a letter of authorization to apply claim funds to your monthly mortgage payments. If this option is selected, Wells Fargo Home Mortgage will need to receive all documents listed in the enclosed package along with verifiable paid receipts for all necessary material and labor. After our 100 percent inspection has been completed, the claim fund will be applied toward the balance due on the loan. If funds remain after the loan is contractually current, they will be released to you.

(Complaint, Exhibit A, July 5, 2011 letter, p. 1).

The July 2011 letter also stated:

TO RECEIVE YOUR FIRST RELEASE
Wells Fargo Home Mortgage must receive all of the above items, except the Certification of Completion, before processing continues. When the items have been received, a check equal to one-third of the claim check(s) received by our office will be issued to you and your contractors. If you are completing the repairs yourself, please contact our office so we can provide you with the proper guidelines.

TO RECEIVE YOUR SECOND RELEASE
When your repairs are 50 percent complete, please contact our Property Loss Department … An inspection will be required and will be ordered at the expense of Wells Fargo Home Mortgage. When the results of this inspection show that 50 percent of the repairs have been completed, a second check for one-third of the total check(s) received will be released. NOTE: Please contact our office to schedule the inspection one to two weeks before each check is needed.

TO RECEIVE YOUR REMAINING CLAIM FUNDS
When your repairs are complete, please sign and return the enclosed Certificate of Completion form. Upon receipt, a final inspection will be ordered. When the results of this inspection show 100 percent completion, and all required documents have been obtained, the balance will be released.

(Complaint, Exhibit A, p. 2).

Plaintiffs allege that they completed the requirements for the claims funds to be applied to their mortgage balance and/or to be released to Plaintiffs. (Complaint, ¶18). On or around August 8, 2011, Plaintiffs signed and dated the Certification of Completion of Repairs as requested by Defendant. (*Id.*, ¶19; Exhibit B, ECF No. 15 at 18). Plaintiffs continued to repair their home using their personal funds. (*Id.*, ¶20). During these repairs, Defendant refused to apply the escrowed claim funds to the mortgage. (*Id.*, ¶21). In addition to not applying the funds to Plaintiffs' mortgage, Defendant sent Plaintiffs multiple letters informing them that they were delinquent on their loan payments. (*Id.*, ¶22).

Plaintiffs contend that they were using personal funds to repairs their home and the escrowed funds were not being applied to their mortgage payment "as promised by Defendant." (*Id.*, ¶23). As a result, Plaintiffs became further behind on their mortgage payments to Defendant. (*Id.*). On November 30, 2011, Plaintiffs' home was foreclosed. (*Id.*, ¶25).

On February 27, 2014, Plaintiffs filed a First Amended Complaint that alleges nine counts: Count I for Wrongful Foreclosure, Count II for Breach of Contract as to the Deed of Trust, Count III for Breach of Contract as to the July 2011 Letter, Count IV for Fraudulent Misrepresentation, Count V for Conversion of Funds, Count VI for Money Had and Received, and Count VII for Unjust Enrichment and Quantum Meruit. Defendant moves to dismiss Counts I, II, III, and IV.

**STANDARD FOR MOTION TO DISMISS**

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to Plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto Servs.*, 432 F.3d 866, 867 (8th Cir. 2005)).

Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Huang v. Gateway Hotel Holdings*, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

## DISCUSSION

### I.  Count I (Wrongful Foreclosure)

In Count I, Plaintiffs allege a claim for wrongful foreclosure in tort for damages, not equitable relief. "An action in wrongful foreclosure for damages lies only where the mortgagee does not have the right to foreclose at the time the foreclosure proceedings were commenced." *Reliance Bank v. Musselman,* 403 S.W.3d 147, 149 (Mo. Ct. App. 2013). That is, "no wrongful foreclosure action for damages will lie where the mortgagee had a right to foreclose." *Berringer v. JPMorgan Chase Bank, N.A.*, 4:14CV00260 ERW, 2014 WL 1672012, at *4 (E.D. Mo. Apr. 28, 2014)(citing *Dobson v. Mortg. Elec. Registration Sys., Inc./GMAC Mortg. Corp.,* 259 S.W.3d 19, 22 (Mo. Ct. App. 2008)). "Thus, a party seeking damages for wrongful foreclosure must plead and prove he or she was not in default, giving rise to the right to foreclose, at the time the foreclosure proceedings began." *Musselman,* 403 S.W.3d at 149.

In the Complaint, Plaintiffs allege that Defendant "waived the right to insist upon the original payment plan in regards to Plaintiffs' loan by stating it would apply the insurance claims funds to Plaintiffs' monthly mortgage payments." (Complaint, ¶28). Plaintiffs contend that if the insurance claims "funds had been properly applied to Plaintiffs['] mortgage balance they would not have been behind on their payments and would not have been in default." (*Id.*, ¶29).

Defendant maintains that Plaintiff's action for wrongful foreclosure fails as a matter of law because Plaintiffs were in default throughout the relevant timeframe. (ECF No. 21 at 8; ECF No. 28 at 7). When Defendant received Plaintiffs' insurance check, Plaintiffs had structural damage to their home from a fallen tree. (Complaint, ¶8). In addition, Plaintiffs were already behind on their mortgage loan payments. (Complaint, ¶16 (noting that the loan was not "contractually current")). Defendant points to the Deed of Trust, which provides: "All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument … or (b) to the restoration or repair of the damaged Property." (Complaint, Exhibit E, §4). Based upon this provision in the Deed of Trust, Defendant contends that, in a July 2011 letter, it offered Plaintiffs three options: (1) Plaintiffs could bring their loan balance current before Defendant released the insurance proceeds to them for repairs; (2) Plaintiffs could hire a contractor to perform the repairs and receive incremental disbursements from Defendant; or (3) Plaintiffs could use their own personal funds to make the repairs and, following a "100 percent inspection," the funds would be applied to the outstanding loan balance. (Complaint, Exhibit A, at 1). Plaintiffs selected the third option.

Defendant maintains that Plaintiffs' claim for wrongful foreclosure fails because it acted in accordance with its July 2011 letter by maintaining the insurance funds in a special escrow

account and allowing Plaintiffs to perform the repairs to the Property with their own "personal funds." Defendant did not make any disbursements from the escrow account "[d]uring these repairs." (ECF No. 21 at 8-9 (citing Complaint, ¶21). Defendant states that, pursuant to the Deed of Trust, Defendant had the right to hold on to the insurance proceeds to ensure that the work was completed and to protect its interest in the Property. (ECF No. 21 at 9). Defendant also notes that Plaintiffs allege that they "became further behind on their mortgage payments." (ECF No. 21 at 9 (citing Complaint, ¶23)). Defendant emphasizes that Plaintiff was in default at the start of the relevant time frame and never contend that they cured this default.

Defendant further insists that it did not "waive[] the right to insist upon the original payment plan in regard to Plaintiffs' loan by stating [it] would apply the insurance claim funds to Plaintiffs' monthly mortgage payments" (Complaint, ¶28), as alleged by Plaintiffs. (ECF No. 21 at 9). Rather, under the Deed of trust, Defendant, "at its option," could apply any amount of the funds to reduce the indebtedness or use those funds to restore or repair the damaged Property. (Complaint, Exhibit 3, §4). Defendant contends that it complied with this provision by allowing Plaintiff to select the "option" to redirect the insurance proceeds through Plaintiffs' "letter of authorization to apply the claim funds to Plaintiffs' monthly mortgage payments." (ECF No. 21 at 9 (citing Complaint, ¶15). Defendant, however, asserts that Plaintiffs never complied with the "100 percent inspection" requirement, which could not occur until the repairs were completed.

Defendant further states that it did not engage in any "lulling" because it never represented to Plaintiffs that they could receive any incremental reimbursements if they selected the third option. (ECF No. 28 at 7). Defendant argues that under the plain language of the July 2011 letter Plaintiffs were ineligible for incremental reimbursements if they chose to fix the house themselves. Defendant notes that the July 2011 letter provides that the first release check "will

be issued to you and your contractors." (ECF No. 25-1 at 2). The letter continues: "If you are completing the repairs yourself, please contact our office so we can provide you with the proper guidelines." (*Id.*) Defendant emphasizes that Plaintiffs could not have been entitled to a release check because they did not have any "contractors," and that option contemplated a check issued to "you and your contractors." (ECF No. 28 at 4). Further, the July 2011 letter provides that if Plaintiffs were completing the repairs themselves, then they needed to follow up with Defendant for the proper guidelines. (ECF No. 28 at 4-5). Defendant states that the third option (chosen by Plaintiff) does not provide for incremental payments but states that Plaintiffs would be entitled to payment after Defendant received all the documents listed in the enclosed package, paid receipts, and the 100 percent inspection is completed. (ECF No. 28 at 5).

In addition, Defendant claims that reference to "claim checks" in the sections related to the first and second release could not apply to Plaintiffs' situation. Plaintiffs would not have received any checks because Plaintiffs' insurance proceeds would have been applied to their outstanding mortgage. (ECF No. 28 at 5-6).

In response, Plaintiffs argue that they did not make any additional payments on the mortgage while they were repairing their house because they were relying on Defendant's July 2011 letter. (ECF No. 25 at 6). Plaintiffs contend that they were "under the impression, per Defendant's July 2011 letter, that as they were making repairs to their home, with funds out of their own pocket, they would be reimbursed with the remaining insurance proceeds out of the escrow account controlled by Defendant." (*Id.*)(citing *Edwards v. Smith*, 322 S.W.2d 770, 776 (Mo. 1959)(the court assumed that Edwards waived the right to insist upon prompt payment of the installments and, therefore, the Smiths "did not have the right to foreclose at the time they directed the trustee to do so and hence the trustee's sale would constitute a wrongful

foreclosure."). Plaintiffs also assert that Defendant cannot rely on the "100 percent inspection" provision in the July 2011 letter because page 2 of the letter refers to funds that would be released on two occasions while the repairs would be ongoing. (ECF No. 25 at 7 (citing ECF No. 25-1 at 2).

At this stage of the litigation, the Court finds that Plaintiffs state a claim for wrongful foreclosure. Plaintiffs assert that they were lulled into believing that they did not have to pay their mortgage while making their repairs. The July 2011 letter provides that "You may use personal funds to make repairs and provide a letter of authorization to apply claim funds to your monthly mortgage payments." (ECF No. 15 at 15). Plaintiffs allege that while they repaired their home, Defendant refused to apply the escrowed claim funds to the mortgage. (Complaint, ¶21). Based upon the July 2011 letter, the Court finds that average consumers could have believed that they did not need to make loan payments while they were working on the repairs to the house and the funds were escrowed. The Court also notes that Plaintiffs allege that they "completed the aforementioned requirements for the claim funds to be applied to their mortgage balance and/or to be released to Plaintiffs." (Complaint, ¶18). Although Defendant claims that Plaintiffs did not complete the condition precedent of the 100 percent inspection, the Court finds that Defendant's reliance on the 100 percent inspection to be misplaced for two reasons. First, Plaintiffs have alleged that they performed all of the prerequisites to having the claim funds applied to their mortgage balance. The Court must defer to this allegation at this stage of the litigation. *See Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010)("to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face"); Iqbal, 556 U.S. at 678; *Twombly,* 550 U.S. at 570. Second, Defendant's reliance on its own failure to perform a 100 percent inspection is specious because

the ability for such requirement to be performed was within Defendant's complete control. Based upon the current pleadings, the Court finds that Plaintiffs sufficiently allege a claim for wrongful foreclosure.

## II. Count II for Breach of Contract as to the Deed of Trust

In order to recover for breach of contract, a plaintiff must prove: (1) the existence of a valid contract; (2) the rights and obligations of each party; (3) a breach; and (4) damages. *Hanna v. Darr*, 154 S.W.3d 2, 5 (Mo. Ct. App. 2004). The Deed of Trust provides that, in the event of an insured loss, "All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3 and then to prepayment of the principal, or (b) to the restoration or repair of the damaged Property." (ECF No. 15, Ex. E, at §4).

In its Motion to Dismiss, Defendant maintains that it committed no breach of the Deed of Trust. First, Defendant notes that the Deed of Trust was written in "permissive terms" such that Defendant could reduce the outstanding loan balance or pay for the repairs with the insurance proceeds. (ECF No. 21 at 10). Defendant claims that this gave Wells Fargo the "right not an obligation to apply the funds as it sought fit." (*Id.*; *see also* ECF No. 28 at 7). That is, Defendant had the "unilateral right" to choose how the insurance funds would be used. (ECF No. 28 at 7). Second, Defendant asserts that, in keeping with the Deed of Trust, it gave Plaintiffs (in the July 2011 letter) the right to decide how Wells Fargo would use the insurance funds, and Plaintiffs chose to perform the repair themselves and then allow Wells Fargo to apply the funds to their loan. (ECF No. 21 at 10; *see also* ECF No. 28 at 8 (noting that "Wells Fargo generously provided Plaintiffs two additional choices")). Defendant claims that it relinquished its right

under the Deed of Trust to decide the proper use of the insurance funds to Plaintiff. (ECF No. 28 at 8). Defendant states that Plaintiffs voluntarily chose not to pursue an option consistent with the Deed of Trust, but instead to make the repairs themselves for their own benefit. (ECF No. 28 at 8). Defendant describes this as giving "Plaintiffs an opportunity to help themselves." (ECF No. 21 at 10).

Plaintiffs maintain that they relied on the Deed of Trust "in that they expected Defendant to take the proceeds from their insurance check and either help them pay their loan payment OR help them repair their home." (ECF No. 25 at 9). Plaintiffs state that, since Defendant did neither with the insurance check, Defendant breached the Deed of Trust. (*Id.*)

The Court holds that Plaintiffs state a claim for breach of contract based upon the Deed of Trust. Defendant does not dispute that it did not use the insurance claim proceeds either to reduce Plaintiffs' indebtedness or to repair Plaintiffs' home. Instead, Defendants point the Court to the options Defendant provided to Plaintiffs pursuant to the July 2011 letter. The Court, however, finds that Plaintiffs have pleaded that Defendant did not apply Plaintiffs' insurance claim proceeds in either of the ways contemplated by the Deed of Trust. Therefore, the Court finds that Plaintiffs state a claim for breach of contract under the Deed of Trust.

### III.     Count III for Breach of Contract as to the July 2011 Letter

Defendants maintain that they have not breached the contract as to the July 2011 letter. As previously discussed, Defendant states that it had no obligation to make the incremental disbursements of the escrowed funds under the option selected by Plaintiffs. (ECF No. 28 at 8-9). Rather, the self-repair option selected by Plaintiffs contemplated only a single payout directly toward the loan account after the 100 percent inspection. (ECF No. 28 at 9). Defendant states that Plaintiffs have ignored that the 100 percent inspection was a condition precedent to

Defendant's release of the insurance proceeds. (ECF No. 21 at 10). The July 2011 letter does not state that Defendant would release any funds prior to this inspection and Plaintiffs remained obligated to make their original loan payments until the 100 percent inspection was completed. (ECF No. 21 at 10-11). Finally, Defendant states that Plaintiffs have never alleged in the Complaint that Defendant failed to perform the 100 percent inspection and cannot argue that now. (ECF No. 28 at 9).

In response, Plaintiffs state that Defendant cannot rely on the fact that the 100 percent inspection was not completed as the basis for not releasing the funds and breaching the agreement in the July 2011 letter. (ECF No. 25 at 8). First, the 100 percent inspection was not to happen until two prior fund releases took place. (ECF No. 25 at 8)(citing July 2011 letter, p. 2). In addition, pursuant to the July 2011 letter, it was Defendant's duty to perform the 100% inspection and release the remaining funds. (*Id.*) Therefore, Plaintiffs claim that Defendant cannot rely on its own failure to act as a defense to the breach of contract claim. (*Id.*)

At this stage of the litigation, the Court finds that Plaintiffs state a claim for breach of contract for the July 2011 letter. Plaintiffs allege that it completed all of the requirements for the claims to be applied to their mortgage. (Complaint, ¶¶17-18). Defendant cannot rely on the condition precedent of the 100 percent inspection when Defendant failed to perform the inspection. *See Berry v. Time Ins. Co.*, 798 F. Supp. 2d 1015, 1020 (D.S.D. 2011)("These facts are sufficient to state a breach of contract claim because [defendants] may have acted to prevent the condition from going into effect[.]"). The Court denies Defendant's motion to dismiss on this basis.

### IV. Count IV for Fraudulent Misrepresentation

In order to properly plead a cause of action for fraudulent misrepresentation, Plaintiff must plead: (1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation, (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury. *Crossland Const. Co. v. Alpine Elec. Const. Inc.*, 232 S.W.3d 590, 592-93 (Mo. Ct. App. 2007)(citing *Bohac v. Walsh,* 223 S.W.3d 858, 862–63 (Mo. Ct. App. 2007)).

In the Complaint, Plaintiffs allege that "Defendant made a false and material misrepresentation to Plaintiffs, in that it stated that if Plaintiffs would use their own funds to make repairs to their residence, that Defendant would credit the aforementioned insurance proceeds to their mortgage." (Complaint, ¶61 (citing Exhibit A, July 2011 letter). Plaintiffs claim that they relied on this false representation that the insurance proceeds would be applied to their mortgage payments and, as a result, they lost their home. (Complaint, ¶¶64-66).

In their Motion, Defendant maintains that there was no false misrepresentation. (ECF No. 21 at 11). Defendant notes that it only represented to Plaintiffs that it would release the funds after Defendant performed a 100 percent inspection and it did not represent that it would release any of the funds while the repairs were ongoing. (*Id.*). As previously discussed, Defendant argues that it was not obligated to release any funds until the repairs were completed, receipts were received, and an inspection was performed. (ECF No. 28 at 9). Defendant states that Plaintiffs cannot argue that Defendant failed to perform the 100 percent inspection because this allegation was not included in the Complaint. (ECF No. 28 at 9). Further, Defendant claims that any installment from the insurance proceeds would be contrary to Plaintiffs using their

"personal funds" as outlined in the agreement. Thus, Defendant states that there can be no false misrepresentation claim.

In response, Plaintiffs first contend that Defendant cannot rely on the fact that Defendant failed to perform its own 100 percent inspection. (ECF No. 25 at 10-11). Plaintiffs believed that "Defendant would do whatever was needed … in order to complete the inspection and fulfill their end of the contracted agreement. (ECF No. 25 at 11).

Plaintiffs then assert that, contrary to Defendant's argument, Defendant's July 2011 letter outlined how Plaintiffs could receive two installments of insurance proceeds while they were repairing their home. (ECF No. 25 at 11). Plaintiffs refer to the second page of the letter that outlines the steps for Plaintiffs to receive their first and second release while the repairs were ongoing.

Finally, Plaintiffs maintain that the use of their personal funds to complete the repairs does not contradict their claim that they were entitled to insurance claim funds while repairing their home. (ECF No. 25 at 12). Plaintiffs believed that they would use their personal funds to complete the repairs while, pursuant to the July 2011 letter, "the claim funds [would] be applied toward balances due on the loan." (ECF No. 15, Exhibit A, at 15). Plaintiffs claim that they understood that they would pay for the repairs and the insurance funds would pay their mortgage. (ECF No. 25 at 12-13).

At this stage of the litigation, the Court holds that Plaintiffs allege a claim for fraudulent misrepresentation. Defendants, through their July 2011 letter, represented that "You may use personal funds to make repairs and provide a letter of authorization to apply claim funds to your monthly mortgage payments." (ECF No. 15 at 15). Plaintiffs allege that while they repaired their home, Defendant refused to apply the escrowed claim funds to the mortgage. (Complaint,

¶21). Although the July 2011 letter provides that the claim funds would be applied toward the balance due on the loan "after [Defendant's] 100 percent inspection has been completed," the Court finds that average consumers could have believed that they did not need to make loan payments while they were working on the repairs to the house and the funds were escrowed based upon Defendant's representation that the funds would be applied to Plaintiffs' mortgage payments. Further, Plaintiffs have alleged that they provided all of the documents necessary to receive the claim funds, but that such funds were not provided. (Complaint, ¶¶17-18). At the motion to dismiss stage, Plaintiffs have alleged that they relied on the representation that the loan payments would be applied to their mortgage to their detriment. Thus, the Court finds that Plaintiffs state a claim for fraudulent misrepresentation.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Counts I, II, III, and IV [ECF No. 20] is **DENIED** without prejudice.

Dated this 30th day of October, 2014.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**